Argued February 17, affirmed March 22, 1976

In the Matter of the Estate of Pearl E. Heater,
Deceased.

MORLEY et al, *Appellants,*

*v.*

MORLEY, *Respondent.*

(No. 26685, CA 4849)

547 P2d 636

*Betty Jo White,* Silverton, argued the cause and filed the brief for appellants.

*John A. Bryan,* Salem, argued the cause for respondent. On the brief was Kenneth Sherman, Jr., Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Pearl Heater died testate in December of 1972. Her will nominated Charles Morley, her step-grandson, as personal representative, and he was subsequently so appointed by the probate court. In August of 1973 a residual devisee under decedent's will petitioned for removal of Charles Morley as personal representative on the ground that he had been unfaithful or negligent in the administration of his trust. After an evidentiary hearing the probate court dismissed the petition.

In June of 1974 Charles Morley filed his final account and petitioned for a decree of final distribution. In July of 1974 the same devisee who had previously petitioned for removal of the personal representative filed objections to the final account. The objections raised the same issues that had been aired during the hearing to remove the personal representative. Ruling that the prior determination was res judicata, the probate court refused to consider the merits of the objections to the final account. The objecting devisee presented evidence by way of an offer of proof.

The probate court ultimately issued a decree of final distribution. The objecting devisee appeals, contending the personal representative should have been removed, the court misapplied the res judicata doctrine, and the final account should not have been approved.

The argument to remove the personal representative and to disapprove his final account is predicated on the same facts. During about the last five years of her life, decedent inherited substantial assets and sold some property in which she owned an interest. While the record is not wholly clear, apparently decedent received well over $100,000 from the inheritance and property transaction. Yet the personal representative's preliminary inventory and final account stated the value of decedent's estate was about $5,000. Understandably suspicious that a woman of appa-

rently modest lifestyle could have expended such large amounts of money the last years of her life, the objecting devisee attacked the preliminary inventory (seeking removal of the personal representative) and final account (objecting thereto), making the same argument in both contexts — that decedent's estate included assets that the personal representative had failed to account for.

■ Even though the ultimate issue was the same, and the facts were the same, the probate court erred in ruling that its order dismissing the petition to remove the personal representative foreclosed, under the res judicata rule, consideration of the objecting devisee's attack on the final account. As explained at the beginning of the discussion of res judicata in the Restatement of Judgments:

> "This Chapter deals with the effect of judgments upon *subsequent actions.* It deals with the effect of a personal judgment upon a *subsequent action* between the persons who were parties to the [prior] action in which the judgment was rendered * * *." Restatement of Judgments, Introductory Note § 41-77, 157-58. (Emphasis supplied.)

We are not here concerned with the effect of a prior proceeding upon a subsequent proceeding — all rulings in question were rendered in a single probate proceeding. Res judicata is not applicable in this situation.

■ The probate court could have, but did not, base its ruling on the related doctrine known as "law of the case." This doctrine can foreclose relitigation when a ruling or decision has been made in a case and the same issue arises a second time in the *same case.*

> "* * * Possible application of the 'law of the case' can arise in a number of different situations * * *.

> "(1) An appellate court may rule on a matter and then the same legal question may be raised in the trial court after the case has been remanded to that court for further proceedings.

[ 780 ]

"(2) An appellate court may rule on a matter and then the same legal question may be raised in the same appellate court when the case is appealed a second time.

"(3) A trial court may rule on a matter and then the same legal question may be raised a second time in the same trial court. This may be before the same judge or before a different judge." Vestal, *Law of the Case: Single-Suit Preclusion,* 1967 Utah L Rev 1, 4.

Although the same policy considerations underlie both rules, the distinction between res judicata and the law of the case is not just a matter of labels. Law of the case is generally not applied with the same rigor as res judicata. Vestal, supra, 1967 Utah L Rev at 2-3. Res judicata applies equally to legal rulings and factual determinations that merge into a final judgment; law of the case applies more strongly to legal rulings than to factual determinations. *See, Portland T. & S. Bank v. Lincoln Realty,* 187 Or 443, 211 P2d 736 (1949). A change of law or change of facts since the prior adjudication does not negate the applicability of res judicata; but such a change can be a compelling basis to negate the applicability of law of the case. *Pacific Mill Co. v. Inman,* 50 Or 22, 90 P 1099 (1907); Vestal, supra, 1967 Utah L Rev at 6-10, 12, 16. Applied literally, res judicata can prevent a court from correcting what it considers to be a prior erroneous factual or legal determination; however, it has been said that law of the case does not impair a court's ability to correct its errors. Vestal, supra, 1967 Utah L Rev at 18. In sum, "* * * as applied to the effect of previous orders on the later action of the court rendering them in the same case, [law of the case] merely expresses the practice of courts generally to refuse to reopen what has been decided, [but is] not a limit to their power * * *." *Messinger v. Anderson,* 225 US 436, 444, 32 S Ct 739, 56 L Ed 1152 (1912); *see also, Higgins v. California Prune & Apricot Grower,* 3 F2d 896, 898 (2d Cir 1924); *Peterson v. Hopson,* 306 Mass 597, 603, 29 NE2d 140, 132 ALR 1 (1940).

Although the probate court might well have

reached the same conclusion on the basis of law of the case, it erred in refusing to consider the merits of the objections to the final account on the ground of res judicata. We thus consider the merits, on de novo review, relying upon both the record made on the petition to remove the personal representative and the record made, by offer of proof, on the objections to the final account.

■ As previously noted, the question in both contexts was whether decedent's estate included assets at the time of her death that the personal representative had failed to account for. We find that the estate did not include any such assets.

Decedent and Charles Morley jointly operated a farm. The farm property was frequently heavily encumbered; we infer from the record that the farm was, at best, marginally profitable. Of the large amounts of money coming into decedent's possession during the last years of her life, from inheritance and sale of part of the farm, about $70,000 was used to satisfy encumbrances on the farm property. Apparently the balance was used for decedent's personal living expenses. While the personal representative has not proven the specific use of every dollar decedent received during her life, the fact remains that the objecting devisee has not presented any evidence that decedent owned assets *at the time of her death* that were not included in the preliminary inventory and final account.

The objecting devisee could have based his contentions, but did not in the probate court, on a ground that would find at least some support in this record. Some of decedent's assets were, during the last years of her life, given to Charles Morley as, in effect, *inter vivos* gifts. This primarily took the form of decedent's using her assets to satisfy debts that were apparently the personal liability of Charles Morley, although the record is inconclusive on this point. Moreover, there was conflicting evidence about decedent's diminished

mental abilities the last years of her life, about the time some of the *inter vivos* transfers occurred.

A neutral and detached personal representative might have at least explored the possibility of moving to set aside some of decedent's *inter vivos* transfers to Charles Morley and recoup the assets involved on behalf of the estate. Obviously, Charles Morley, as personal representative, has a conflict of interests regarding the possibility of moving against himself to set aside *inter vivos* transfers to himself. At times, the objecting devisee appears to so argue in this court. But from the record we are satisfied that no such claim was ever made in the probate court; there the sole contention involved failure to account for assets decedent owned at her death.

Affirmed.