Argued and submitted June 9, reversed and remanded for new trial November 12, 1986

# STATE OF OREGON,
*Respondent,*

*v.*

# WALTER OSBORNE,
*Appellant.*

## (J82-0836; CA A35768)

728 P2d 551

J. Michael Alexander, Salem, argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Young, Judge.

WARDEN, P. J.

## WARDEN, P. J.

Defendant was charged with murder, arson in the first degree, felony murder and criminal conspiracy. In a jury trial, he was found guilty on all counts and sentenced to life imprisonment. He appeals, assigning eight errors. We reverse and remand for a new trial.

Defendant and the murder victim were married in 1971. After experiencing marital problems in late 1979, they separated and were later divorced; sale of their house, situated on ten acres, was ordered. The victim continued to live in the house. Defendant, apparently angered by the break-up of the marriage, allegedly sought someone to kill his ex-wife and burn down the house. On May 17, 1980, the victim left work, saying that she had plans to go out. She was last seen around midnight, driving into the long driveway leading up to the house. At around 2 a.m., a neighbor heard an unfamiliar vehicle going up the driveway and, later, going down the driveway. Soon afterward, the house burned to the ground. The victim's badly burned remains were found in the bedroom area of the house on some bedsprings. Evidence indicated that she had died from gunshot wounds before the fire started and that the fire had been set. On the weekend of the fire, defendant was on a fishing trip with his sister, his brother-in-law and the children from his marriage to the victim.

The lengthy procedural history of the case is relevant to the defendant's claim that he was denied a speedy trial. He was arrested in July, 1981, for the alleged crimes. He was jailed without bail until November, 1981. His request that trial be set for late January or early February, 1982, was denied, but the trial was set for March 1, 1982. On that day, the state's motion for continuance was denied, and the case was dismissed.

Defendant was reindicted on April 9, 1982, and trial was set for August 23, 1982. In June, the state requested an omnibus hearing to determine the admissibility of a taped confession by Danny Saunders to the murder and arson and of statements of others. On July 27, the trial court suppressed the statements and the state appealed, thereby postponing the trial pending the appeal. We affirmed the suppression on May 25, 1983, without opinion. *State v. Osborne,* 63 Or App 382, 663 P2d 1313, *rev den* 295 Or 618 (1983). While the appeal was

pending, defendant was held in jail for five months before being granted a security release.

A new trial date was set for March 6, 1984. In February, the state moved for reconsideration of the admissibility of the taped statements. On March 12, after a hearing, the trial court again ordered suppression of the statements. The court also denied defendant's motion to dismiss for want of a speedy trial. The case was again set for trial on August 28, 1984. In late July, defendant moved again to dismiss for want of speedy trial; the motion was denied. The case proceeded to trial, but the trial judge became ill during the trial, and defendant's request for a mistrial was granted.

The case was reset for trial on February 19, 1985. Before that date, defendant's motions for a change of venue and for dismissal for want of a speedy trial were denied. The jury convicted him on all counts.

Defendant first contends that the trial court erred in denying his motion to dismiss for want of a speedy trial.[1] We affirm that ruling.

■ Article I, section 10, of the Oregon Constitution provides that "[n]o court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay * * *." The Oregon Supreme Court has treated Article I, section 10, as equivalent to the right to a speedy trial guaranteed by the Sixth Amendment. *State v. Evans,* 249 Or 314, 432 P2d 175 (1967). Although it noted some differences between the Oregon and federal constitutional guarantees in *State v. Ivory,* 278 Or 499, 564 P2d 1039 (1977), the Supreme Court adopted the four-part test of *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 101 (1972), under which a court must balance four factors to determine whether a defendant's rights, including the right to a speedy trial, have been denied. Those factors are: (1) length of delay; (2) whether the defendant asserted his right to a speedy trial; (3) reasons for the delay; and (4) prejudice to the defendant. Oregon, however, does not require that the defendant assert his speedy trial

---

[1] Defendant has not invoked ORS 135.747 and has only claimed violation of his constitutional rights. Accordingly, we do not determine whether a violation of that statute has been established.

right.[2] *State v. Vawter,* 236 Or 85, 386 P2d 915 (1963); *accord: Haynes v. Burks,* 290 Or 75, 619 P2d 632 (1980).

■ ■ Defendant does not argue that there was excessive pre-arrest delay. The state concedes that the length of pretrial delay is sufficient to trigger examination of the other factors. The trial judge attributed the eight-month delay between the arrest and the first trial setting of March 1, 1982, to defendant's numerous changes of counsel and to several pretrial hearings. That time period cannot be weighed against the state. On the March 1, 1982, trial date, the case was dismissed due to the state's inability to proceed without the testimony of the alleged coconspirators, none of whom had yet been tried. The unwillingness of the state to proceed while those witnesses were unavailable does not suggest that it was attempting to obtain an unfair advantage. *See State v. Dykast,* 300 Or 368, 712 P2d 79 (1985).

■ Defendant was reindicted the next month, and the trial was set for August, 1982. On July 27, 1982, the trial court suppressed taped statements of Saunders and others. The state deemed the statements essential to its case and appealed. Defendant does not claim that the state acted in bad faith in appealing, and the 13 months that elapsed during the pendency of the appeal do not weigh against the state. *See State v. Hacker,* 62 Or App 691, 662 P2d 21 (1983).

■ After this court had affirmed the trial court's suppression order and the Supreme Court had denied review, a new trial date of March 6, 1984, was set. The state moved for reconsideration of the admissibility of the taped statements, and the motion was not heard until March 12, 1984. It was denied, and the trial was reset for August, 1984. During the trial, the judge fell ill and could not continue to hear the case. Defendant's request for a mistrial and a new trial date was granted. The delay in hearing the motion and the delay caused by the judge's illness cannot weigh heavily, if at all, against the state. The final trial setting was for February 19, 1985, and the case was tried.

■ Defendant has failed to demonstrate that he was unduly prejudiced by the delays. He admits that he was not in

---

[2] We note, however, that defendant did timely assert his right to a speedy trial.

custody during most of the period. He argues that he suffered anxiety and increased public suspicion; however, he does not attribute that to the delays, but rather to the news reports about the alleged crimes and the trials of the alleged coconspirators. Finally, he contends that the delays caused certain witnesses to become unavailable. One of those witnesses, Ward, did testify at trial. The testimony of another could have been preserved by deposition but was not. Others were to have testified concerning the locks on the victim's house and about her social life, apparently to point to another person as a possible suspect. Defendant has failed to show why that evidence was not available from other sources. His constitutional right to a speedy trial was not violated, and we affirm the ruling denying dismissal.

■ Defendant next contends that his motion for change of venue should have been granted. ORS 131.355 provides:

> "The court, upon motion of the defendant, shall order the place of trial to be changed to another county if the court is satisfied that there exists in the county where the action is commenced so great a prejudice against the defendant that he cannot obtain a fair and impartial trial."

A motion for change of venue based on ORS 131.355 is addressed to the sound discretion of the trial court. *State v. Schroeder,* 55 Or App 932, 640 P2d 688, *rev den* 293 Or 373 (1982). However, appellate courts are empowered to evaluate the circumstances independently to determine whether the trial court took sufficient measures to assure that the jury was free from outside influence. *State v. Herrera,* 32 Or App 397, 574 P2d 1130, *rev'd on other grounds,* 286 Or 349, 594 P2d 823 (1978). We have reviewed the newspaper coverage of the alleged crimes and the trials of defendant and his alleged coconspirators. The publicity of the case was sufficiently removed in time from defendant's February, 1985, trial and, in any event, was not such that a fair trial would be prevented. *State v. Smith,* 58 Or App 458, 648 P2d 1294 (1982).

■■ Defendant also introduced results of a public opinion poll. That survey does not purport to provide a random sampling of the public, and the questions used were not neutrally phrased; no useful responses were elicited. We, therefore, give it no weight. *See State v. Schroeder, supra.* We have also reviewed the transcript of the *voir dire* to determine

whether the trial court took sufficient steps to assure that defendant be tried by an impartial jury. Apparently no difficulty was encountered in finding impartial jurors. We are not persuaded that the trial court exceeded the bounds of its discretion, and we affirm the order denying a change of venue.

■ Defendant next assigns error to the trial court's refusal to dismiss the case on the ground of prosecutorial misconduct. In his opening statement, the prosecutor referred to how he expected Rowe to testify. Rowe already had been convicted for his participation in the crime. At trial, Rowe invoked the right to remain silent, despite being ordered by the trial judge to testify. The prosecutor, during pre-trial discussion of defendant's motions, had stated that Rowe had said that he would testify. In almost identical circumstances, the Oregon Supreme Court has held that a defendant was not prejudiced by such an opening statement. *State v. Frazier,* 245 Or 4, 418 P2d 841 (1966). The trial court's refusal to dismiss the case for prosecutorial misconduct was not error.

Defendant next assigns error to the admission of the taped confession of Saunders.[3] He contends that the admission of the tape was contrary to the "law of the case" and, also, that it violated defendant's right to confront witnesses under both the Oregon and federal constitutions.

As noted, in June, 1982, the state filed a motion for an omnibus hearing to determine the admissibility of Saunders' taped confession and of certain other statements. The trial court ruled the evidence "inadmissible in [the] face of objections of violation of [the] Oregon Constitutional right to meet the witnesses face to face." The state appealed the ruling, and we affirmed without opinion. The Supreme Court denied the petition for review. Before the mistrial was granted due to the illness of the judge, the state had moved to reconsider the trial court's earlier ruling suppressing the taped confession. The trial court again ruled the tape inadmissible, on the basis of both the Oregon Constitution and the law of the case. However, at the trial in which defendant was convicted, a different judge ruled the tape admissible, and it was played to the jury.

---

[3] Saunders' taped confession was recorded while he was in police custody on August 11, 1981, in Lancaster, California. He said that defendant conspired with, hired and paid him to kill the victim and to burn the house. Saunders also described how he murdered her and set fire to the house.

Law of the case is well recognized in Oregon in civil and criminal cases. *See Huszar v. Certified Realty Co.,* 272 Or 517, 538 P2d 57 (1975); *Simmons v. Wash. F. N. Ins. Co.,* 140 Or 164, 13 P2d 366 (1932); *State v. Scott,* 68 Or App 386, 681 P2d 1188, *rev den* 297 Or 547 (1984); *State v. Perras,* 52 Or App 1071, 630 P2d 410, *rev den* 291 Or 662 (1981); *Morley v. Morley,* 24 Or App 777, 547 P2d 636 (1976). According to that rule:

> "[W]hen a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review." *Simmons v. Wash. F. N. Ins. Co., supra,* 140 Or at 166. (Citations omitted.)

The prior ruling is controlling insofar as the questions presented are the same. *Huszar v. Certified Realty Co., supra,* 272 Or at 522. However, changes in the law or in the facts since the prior ruling can negate its application. *Morley v. Morley, supra,* 24 Or App at 781.

 Law of the case applies here, and the trial court erred in admitting the tape. The precise issue of admissibility was presented to this court after the trial court had ruled it inadmissible. We affirmed without opinion, and the Supreme Court denied review. The decision thus became the law of the case and was, and is, binding on the trial court in all further litigation in this case. We are also bound by the decision.

 The state, however, argues that the Supreme Court's decision in *State v. Farber,* 295 Or 199, 666 P2d 821 (1983), altered the applicable law and that, therefore, the decision ruling the taped confession inadmissible is not binding. *Farber* decided whether the defendant's *federal* confrontation right was violated by the admission of a coconspirator's statement, and the Supreme Court expressly declined to decide the case under the Oregon Constitution. 295 Or at 207 n 10. The state's assertion that *Farber* changed the applicable *Oregon* law therefore has no merit. Because the error in admitting the taped confession of a convicted coconspirator was clearly prejudicial to defendant, we reverse. We need not address the constitutional issues further.

Defendant next assigns error to the admission of Byron Brown's testimony concerning statements made by Saunders in defendant's presence. Brown testified that Saunders and defendant had a conversation in which, after defendant had solicited Saunders to kill the victim, they discussed the financial arrangements and ways to cover up the payments.

 The testimony is admissible under OEC 801(4)(b)(B), which provides, in pertinent part:

"(4) * * * A statement is not hearsay if:

"* * * * *

"(b) The statement is offered against a party and is:

"* * * * *

"(B) A statement of which the party has manifested the party's adoption or belief in its truth * * *."

A party may manifest his belief in the statement expressly, impliedly or by conduct. *State v. Severson,* 298 Or 652, 696 P2d 521 (1985). Here, defendant responded to Saunders' statements by discussing specific facts concerning the murder of defendant's ex-wife, including financial arrangements and methods of covering up his payments to Saunders. Defendant, as evidenced by his conversation with Saunders, manifested his belief in Saunders' statements, *i.e.,* that he would kill the victim. The testimony concerning Saunders' statements in defendant's presence, therefore, was properly admitted under OEC 801(4)(b)(B).[4]

 Defendant further contends that the trial court erred in admitting Brown's testimony concerning statements made by Saunders outside the presence of defendant. Brown testified that Saunders asked him to help him commit the murder and burn the house. That testimony is admissible either as a statement against penal interest (OEC 804(3)(c)) or a statement by a coconspirator during the course and in the furtherance of the conspiracy. OEC 801(4)(b)(E).

---

[4] The state alternatively argues that the testimony concerning Saunders' statements is not hearsay, because the statements were admitted only to show that they were made, not to prove the truth of the matter asserted, citing *United States v. Wolfson,* 634 F2d 1217, 1219 (9th Cir 1980). Because we hold the testimony admissible under OEC 801(4)(b)(B), we do not address that argument.

OEC 804(3)(c) provides, in pertinent part:

"(3) The following are not excluded * * * if the declarant is unavailable as a witness:

"* * * * *

"A statement which was at the time of its making * * * so far tended to subject declarant to civil or criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

Saunders, the declarant, was unavailable, because he, like Rowe, refused to testify, despite being ordered to do so by the trial judge. Saunders' solicitation of Brown to aid in the crimes clearly tended to subject Saunders to criminal liability. The last sentence of OEC 804(3)(c) does not apply here, because the statement is not offered to exculpate the accused; therefore corroborating circumstances are *not* required to indicate clearly the trustworthiness of the statement. The requirements of OEC 804(3)(c) were met.

OEC 801(4)(b)(E) provides, in pertinent part:

"(4) * * * A statement is not hearsay if:

"* * * * *

"(b) * * * The statement is offered against a party and is :

"* * * * *

"(E) * * * A statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

OEC 801(4) defines certain statements as non-hearsay, thereby allowing them to be admitted. Proof of the existence of the conspiracy must be made before the coconspirator rule may apply. *State v. Farber, supra.* In this case, Brown's testimony concerning defendant's and Saunders' conversation, coupled with the testimony of Lester Osborne, defendant's brother, that defendant had said that he would get the house if he had to burn it down with his ex-wife in it, provided evidence from which a jury could find that defendant conspired with Saunders to kill her and burn down the house. The alleged conspiracy had been established by independent evidence, and the coconspirator's statement was made during the

course of and in the furtherance of the conspiracy. The statement, therefore, was properly admitted under OEC 801(4)(b)(E).

 Defendant claims, however, that the admission of Brown's testimony violated his constitutional right to confront witnesses. Although the confrontation clauses of the Oregon and the federal constitutions differ in their wording,[5] the Oregon Supreme Court has held that the federal test governs the state Confrontation Clause. *State v. Campbell,* 299 Or 633, 648, 705 P2d 694 (1985). The federal test, established in *Ohio v. Roberts,* 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), and used in *State v. Campbell, supra,* has two parts: first, the declarant must be unavailable; and, second, the declarant's statements must have adequate indicia of reliability. Here, Saunders was unavailable, because he refused to testify. His statement was clearly against his penal interest and was spontaneously made to Brown. "These are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." *Dutton v. Evans,* 400 US 74, 89, 91 S Ct 210, 27 L Ed 2d 213 (1970). Also, the statement concerned future acts, not Saunders' recollection of past events. It, therefore, "carried on its face a warning to the jury against giving the statement undue weight." *Dutton v. Evans, supra,* 400 US at 88. The statement was sufficiently reliable, and defendant's constitutional right to confront witnesses was not violated.

 To determine whether a defendant's right of confrontation is violated by the admission of a coconspirator's statement, *Dutton v. Evans, supra,* listed four reliability factors to be considered: whether the declaration contained assertions of past fact; whether the declarant had personal knowledge of the identity and role of the participants in the crime; whether the declarant possibly was relying on faulty recollection; and

---

[5] The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

Article I, section 11, of the Oregon Constitution differs slightly:

"In all criminal prosecutions, the accused shall have the right * * * to meet witnesses face-to-face."

whether the circumstances under which the statements were made provided reason to believe that the declarant had misrepresented the defendant's involvement in the crime. 400 US at 88-89. A statement need not meet all four factors to be admissible. *United States v. Perez,* 658 F2d 654 (9th Cir 1981). Here, Saunders' statement soliciting Brown's help contained neither assertions nor recollections of past facts. It also did not misrepresent defendant's involvement. Brown's testimony concerning the conversation between defendant and Saunders showed Saunders' personal knowledge of the identity and role of the other participant in the crime. Weighing the *Dutton* factors, Brown's testimony concerning Saunders' statement did not violate of the Confrontation Clause.

Defendant finally assigns error to the admission of the testimony of Danny Saunders' brother, Tom, concerning statements made to him by Danny. Those statements are also admissible under OEC 801(4)(b)(E) as statements of a coconspirator, and defendant's right to confront witnesses was not violated. With reference to the *Dutton* factors, the statement of Saunders to his brother contained neither assertions nor recollections of past facts; he was asked by defendant to commit the crime, so he, therefore, knew the identity and role of the participants, and he had no motive to misrepresent defendant's involvement in the crime. The testimony of Tom relating Danny's statements to him therefore is admissible.

Reversed and remanded for a new trial.