Argued and submitted May 20, reversed and remanded December 9, 1987

## STATE OF OREGON,
*Appellant,*

*v.*

## THOMAS EARL DAVIDSON,
*Respondent.*

(86D104688; CA A42528)

746 P2d 753

Jens Schmidt, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

George E. Price, Salem, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

**NEWMAN, J.**

In this DUII prosecution, the state challenges pretrial orders that suppressed the results of blood tests and dismissed the case. ORS 138.060(3). We reverse.

On the evening of February 23, 1986, defendant's vehicle struck and injured a pedestrian.[1] After administering field sobriety tests, the police arrested defendant for driving under the influence of intoxicants. Officer Peterson took defendant to a hospital, although he was not injured. He gave defendant *Miranda* warnings and asked him to take a blood test. Before any blood was drawn, defendant signed a card which was read into the record:

> "Having been fully informed of my right not to have a search made of my person, my property, my premises, or property within my custody or control, without a search warrant being first obtained, [inaudible] my right to refuse to consent to any search of my person or property, I do hereby freely, voluntarily and knowingly, without threat or promise by any person, authorize and consent to a search of my person, property or premises and of the seizure of any article thereon. I further understand that this search may result in a criminal charge being filed against me."

Defendant's blood was drawn at 10:35 p.m. Its alcohol content was .16 percent. Blood was drawn again at 11:49 p.m.; its alcohol content was .14 percent. Between the blood tests, the police took defendant to the police station, where he took an Intoxilyzer breath test, after Peterson advised him of his rights and the consequences of refusing or failing the test. ORS 813.130. The Intoxilyzer showed a blood alcohol content of .14 percent. Before either blood test at the hospital, however, Peterson did not warn defendant that the results could be used against him at trial.

The state assigns as error that the court granted defendant's motion to suppress the results of the blood tests. During the argument, the court stated:

> "But to me, a breathalyzer is synonymous to a blood test, if he's not injured.
>
> "* * * * *

---

[1] The pedestrian subsequently died of the injuries.

"Well, I think that he has to be at least warned that the blood test could be used against him at trial. * * * [I]f he's not injured, I think they have to warn him of his rights.

"* * * * *

"* * * [Defendant] was taken up to the hospital, under arrest; * * *. The officer testified that he did not warn the defendant at the time of the blood test that it could be used against him at trial. He gave him his *Miranda* warnings * * *. But that doesn't have anything to do with the question of a blood test. And in my opinion, it's the same duty an officer has in warning an accused at the time of taking a breathalyzer test the results that would occur. If you refuse to do it, and that would be his privilege. This was not given him the opportunity at the time he was given the blood test. He was not warned that it could be used at the time of trial."

The prosecutor argued that defendant had signed a consent "to a search of my person" and that the blood test was a body search. Defendant did not argue that he did not understand that he was consenting to a blood test when he signed the consent card.[2] The court and the prosecutor then had this exchange:

"Q [Court]: Now are you trying to tell me that a search of the property and the search of a person means that they can take a blood test as a warning [sic]? Is that what you are trying to tell me * * *? Now be honest with me!

"* * * * *

"A [Prosecutor]: Your Honor, I am. The cases [inaudible] specifically say a blood test is a search.

"Q [Court]: This case is dismissed and you take it up on an appeal. I've never heard so much of a ridiculous remark in all my life."

The court's suppression order provides:

"That defendant's motion to suppress the results of the tests of the blood drawn from defendant because of inadequate warnings is granted. As the State of Oregon intended to use the results of the testing of the blood drawn from defendant for the same purpose as a breath test is given, defendant is

---

[2] Defendant argued below, but not on appeal, that his consent was involuntary, because he claimed that Peterson had said that he could not make a telephone call before he took the blood tests. The court rejected that claim and denied defendant's motion to suppress the results of the blood tests on that ground.

entitled to a type of implied consent warning which would at least include an explanation to defendant that the results of the blood test will be admitted against him in evidence. That defendant consented to having his blood drawn for testing on February 23, 1986 is insufficient for purposes of this trial."

The court erred. ORS 813.140 provides:

"A police officer may obtain a chemical test of the blood to determine * * * the presence of a controlled substance in the person as provided in the following:

"(1) If, when requested by a police officer, the person expressly consents to such a test."

At Peterson's request, defendant signed a consent "to a search of my person." We interpret that consent, in the circumstances in which defendant gave it, as an express consent to the blood test, as ORS 813.140 requires. *See State v. Stover,* 271 Or 132, 145, 531 P2d 258 (1975). Moreover, the consent form that defendant signed states that he understood that the search "may result in criminal charges being filed against me." The police were not required to warn defendant further.

■     The state also assigns as error that the court denied the state's request for a continuance and dismissed the case. After the judge's suppression ruling, this exchange took place:

"[Prosecutor]:    * * * And we'd like to appeal that, and we'd like a continuance at this time [inaudible].

"[Court]:   I'm certainly going to deny it, and I'm liable to dismiss your case. This guy's been coming in here since, you know, since April.

"[Prosecutor]:   Certainly. Your Honor—

"[Defense Counsel]:   Your Honor, if they appeal this case, then let's shut it off right now, because we're not going to be coming back here again. That's like taking two shots at him.

"[Court]:   You're so right. I agree.

"[Defense Counsel]:   If that's what he wants to do—

"[Court]:   That's what you want to do, I'll dismiss the case.

"[Defense Counsel]:   That's what you want to do?

"[Prosecutor]:   Right.

"* * * * *

"[Court]:   This case is dismissed and you take it up on an appeal."

The court entered two orders of dismissal. One recited:

"Preliminary matters were disposed of by the court. The trial was commenced and the court dismissed the case against the defendant."

The other recited:

"This matter having come before the court on the 29th day of October, 1986, the time set for trial, * * *, and

"The State of Oregon requested a stay and stating it was not ready to proceed in order to appeal the court's order of October 29, 1986 suppressing evidence,

"IT IS HEREBY ORDERED that the request for stay is denied and the above-captioned case is dismissed."

The court abused its discretion when it refused to grant the continuance and dismissed the case. Apparently, it made a prospective ruling that the delay that the state's appeal would cause would be unduly prejudicial to defendant. An interlocutory appeal by the state, however, is ordinarily a reason that justifies delay. *See State v. Osborne,* 82 Or App 229, 728 P2d 551 (1986). Although the state had the results of the breath test, the results of the blood tests were crucial evidence in a serious case. The appeal is not frivolous. The delay that the state's appeal would cause should be entitled to no weight in determining defendant's speedy trial rights.[3]

Reversed and remanded.

---

[3] ORS 135.747 provides:

"If a defendant charged with a crime, whose trial had not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

Article I, section 10, provides:

"[J]ustice shall be administered * * * without delay * * *."

The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."