Argued and submitted August 17, reversed and remanded October 4, 2006

In the Matter of
Jacob Lee Thompson
and Andrew Ray Thompson,
Minor Children.

John Robert POET,
*Appellant,*

*v.*

Christian Lee THOMPSON
and Bernice Kaye January-Pocza,
*Respondents.*

15-04-05065; A129220

144 P3d 1067

Ralph Bradley argued the cause and filed the brief for appellant.

No appearance for respondents.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Leonard, Judge pro tempore.

HASELTON, P. J.

**HASELTON, P. J.**

Petitioner appeals from a judgment denying his application for custody and visitation or contact rights pursuant to ORS 109.119(3).[1] He contends that the trial court erroneously concluded that, because of certain determinations rendered in the context of a prior hearing pertaining to temporary visitation, petitioner was precluded from presenting evidence regarding the existence of a "child-parent relationship." *See* ORS 109.119(3)(a). We agree that the trial court so erred and, consequently, reverse and remand.

The circumstances material to our analysis and disposition are undisputed. Petitioner was, and is, the longtime companion and friend of Tuttle, the maternal grandmother of two boys, J (who was born in March 1997) and A (who was born in December 1998). For substantial portions of the children's lives until late January 2004, petitioner, individually and in combination with Tuttle, assumed significant responsibilities with respect to the care, support, and guidance of both children.[2] J's and A's parents never married, and, although mother (Tuttle's daughter) was initially awarded custody of the children, in April 2003 father successfully petitioned for modification of custody. The relationship between petitioner and father, which had been close, subsequently deteriorated, in part over disagreements about petitioner's proper role and the children's needs. Finally, on January 29, 2004, father precluded any further contact between petitioner and the children.

On March 15, 2004, petitioner filed a petition for custody and visitation or contact rights pursuant to ORS 109.119. Petitioner also, and concomitantly, filed a motion for temporary visitation under ORS 109.119, with a corresponding show cause order.

---

[1] Respondents have not appeared on appeal.

[2] Our description of the relationship between petitioner and the children is consciously imprecise. Given our analysis and disposition, we necessarily imply no view as to the disputed details of that relationship, much less of the legal significance, on the present record, of particular disputed matters.

The hearing on the motion for temporary visitation occurred on May 4 and 5, 2004. At the beginning of that hearing, the judge, the Honorable Cynthia Carlson, described the scope of that proceeding:

> "And I understand we are not here to litigate the petition that hasn't even been responded to. We are here only to talk about whether or not there should be some schedule set up for temporary visitation."

Thereafter, petitioner presented evidence pertaining to the existence of a "child-parent relationship" (ORS 109.119(3)(a)) or, alternatively, an "ongoing personal relationship" with the children (ORS 109.119(3)(b)), and to the rebuttal of the statutory "best interest" presumption prescribed in ORS 109.119(2)(a). *See* ORS 109.119(4). Mother and father disputed that evidence and presented evidence themselves.

At the conclusion of the hearing, Judge Carlson rendered an oral ruling, determining that (1) petitioner had failed to prove the existence of a "child-parent relationship"; (2) petitioner had proved the existence of an "ongoing personal relationship" with the children; and (3) notwithstanding that "ongoing personal relationship," petitioner had failed to rebut the statutory "best interest" presumption by clear and convincing evidence, ORS 109.119(3)(b), and, thus, had failed to establish an entitlement to temporary visitation rights. Judge Carlson urged the parties to work cooperatively in the children's best interests. She then continued:

> "And I do think, though, that it will be really important when this case comes up for trial on the underlying petition, which is like we have to have two trials on this issue, maybe through this counseling which you've suggested this can actually be worked out through agreement rather than going through this whole thing again.
>
> "* * * * *
>
> "* * * [I]f [counseling] doesn't work, then do the custody study. I'm going to order that a custody study take place in time for the trial. I don't know what the time line is likely to be for the trial to be set, but I think if you really focus and put your energies into the counseling part, you will do a lot better for yourselves and for your kids, long-term, than if you just decide to duke it out and take your chances with me

or some other judge about the ultimate decisions to be made."

A written order, stating Judge Carlson's findings, was entered on June 25, 2004.

The parties were unable to resolve their dispute. Consequently, on June 2 and 3, 2005, 13 months after the hearing on temporary visitation, the trial on the petition occurred. At the beginning of that proceeding, the judge, the Honorable Lyle Velure, inquired about the significance of Judge Carlson's June 25, 2004, order and, particularly, whether Judge Carlson's determination that petitioner had failed to prove the existence of a "child-parent relationship" should be given a preclusive, "law of the case" effect.[3] Petitioner's counsel responded that any sort of preclusion, whether by virtue of "law of the case" or otherwise, should not apply because the parties understood that the scope of the prior hearing was limited and, consequently, "we didn't have a chance to present our full evidence." The court, however, remained concerned by the fact that Judge Carlson had rendered "specific findings" and, ultimately, deemed those findings to be preclusive:

> "In order for this court to give the relief requested by the petitioner, the Court would have to reverse the findings of [Judge Carlson].
>
> "* * * * *
>
> "* * * [H]ad Judge Carlson merely denied the motion for temporary relief, I would not reach the same conclusion.
>
> "What I'm basing my order on is not on the ruling on the temporary order itself but upon her recitation of the findings of fact [*viz.*, that a 'child-parent relationship between Petitioner and [the children] does not exist' and 'an ongoing personal relationship exists between Petitioner and [the children] but the presumption that the Respondents did not act in the best interest of the children has not been rebutted by clear and convincing evidence']."

---

[3] Judge Velure did not have the benefit of the transcript of the May 4 and 5, 2004, hearing because that transcript was not produced until after the trial.

The trial court, consequently, limited petitioner's presentation of evidence to matters occurring after the date of the temporary visitation hearing.

Petitioner presented evidence, conforming to that limitation, pertaining to rebuttal of the statutory "best interest" presumption. Petitioner also made a general offer of proof regarding the witnesses he would have called concerning the existence of a "child-parent relationship" within six months of the filing of the petition in March 2004. Respondents disputed petitioner's evidence and testified themselves.

■      On June 14, 2005, the trial court entered its judgment denying the petition. That disposition was predicated on the following two findings:

"C.   On June 24, 2004 [*sic*] the Honorable Cynthia Carlson found that an ongoing personal relationship existed between Petitioner and [J] and [A].

"D.   The presumption that the Respondents did not act in the best interest of the children has not been rebutted by clear and convincing evidence. Therefore, Petitioner does not have the right to have custody, visitation or contact with the children."

On appeal, petitioner raises several assignments of error. For the reasons that follow, we conclude that petitioner's first assignment, which challenges the trial court's application of "law of the case" preclusion, is dispositive and obviates any need to address petitioner's other assignments.

Before addressing the substance of petitioner's challenge, however, it is useful to briefly put this dispute into practical context. As pertinent here, ORS 109.119 provides, in part:

"(2)(a)   In any proceeding under this section, there is a presumption that the legal parent acts in the best interest of the child.

"* * * * *

"(3)(a)   If the court determines that a child-parent relationship exists and if the court determines that the presumption described in subsection (2)(a) of this section has

been rebutted by a preponderance of the evidence, the court shall grant custody, guardianship, right of visitation or other right to the person having the child-parent relationship, if to do so is in the best interest of the child. The court may determine temporary custody of the child or temporary visitation rights under this paragraph pending a final order.

"(b)   If the court determines that an ongoing personal relationship exists and if the court determines that the presumption described in subsection (2)(a) of this section has been rebutted by clear and convincing evidence, the court shall grant visitation or contact rights to the person having the ongoing personal relationship, if to do so is in the best interest of the child. The court may order temporary visitation or contact rights under this paragraph pending a final order."

Subsection (4) then identifies a set of nonexclusive factors pertaining to the rebuttable "best interest" presumption with respect either to (a) "visitation or contact rights" or (b) "custody, guardianship or other rights[.]" Finally, ORS 109.119(10) includes the following pertinent definitions:

"(a)   'Child-parent relationship' means a relationship that exists or did exist, in whole or in part, within the six months preceding the filing of an action under this section, and in which relationship a person having physical custody of a child or residing in the same household as the child supplied, or otherwise made available to the child, food, clothing, shelter and incidental necessaries and provided the child with necessary care, education and discipline, and which relationship continued on a day-to-day basis, through interaction, companionship, interplay and mutuality, that fulfilled the child's psychological needs for a parent as well as the child's physical needs. However, a relationship between a child and a person who is the nonrelated foster parent of the child is not a child-parent relationship under this section unless the relationship continued over a period exceeding 12 months.

"* * * * *

"(e)   'Ongoing personal relationship' means a relationship with substantial continuity for at least one year, through interaction, companionship, interplay and mutuality."

Four aspects of the statutory design are especially pertinent here. First, the statute expressly contemplates and authorizes an award of "temporary visitation rights" or "temporary visitation or contact rights" as distinct from other, "final" relief. *See* ORS 109.119(3)(a), (b). Second, only a person who establishes a "child-parent relationship," as opposed to an "ongoing personal relationship," can obtain custody or guardianship. ORS 109.119(3)(a). Third, the determination of whether an asserted relationship is a "child-parent relationship," as opposed to an "ongoing personal relationship," concomitantly defines the petitioner's standard of proof for rebutting the statutory "best interest" presumption: "a preponderance of the evidence" for the former; "clear and convincing evidence" for the latter. ORS 109.119(3)(a), (b). Finally, as a practical matter, presentation of evidence as to the nature of the relationship is frequently also probative of the rebuttal criteria set out in subsection (4), with the corollary that preclusion of evidence concerning the nature of the relationship can also affect the assessment of the rebuttal criteria.

Here, the trial court, by giving preclusive effect to the findings rendered in the context of the temporary visitation hearing, substantially conflated the determination of entitlement to preliminary, or interim, relief with the determination of entitlement to final relief. That was so in at least two respects. First, because only a person in a "child-parent relationship" can obtain custody, the trial court, by precluding petitioner from revisiting and possibly proving the existence of a "child-parent relationship," precluded any award of custody. That is, the trial court effectively treated the results of the preliminary hearing on temporary visitation as being determinative of petitioner's entitlement to "final" custody. Second, because the nature of the petitioner's relationship with the child or children determines the standard of proof for rebutting the statutory "best interest" presumption, the trial court, by treating the results of the temporary visitation hearing as binding, applied a more demanding ("clear and convincing evidence") standard of proof in adjudicating petitioner's asserted entitlement to visitation and contact rights.

As described above, 208 Or App at 446, the trial court believed that, under "law of the case" principles, it was

compelled to give preclusive effect to the findings rendered in denying the motion for temporary visitation. We respectfully disagree.

■ The scope of the "law of the case" doctrine is somewhat amorphous. Oregon courts have usually invoked that doctrine in giving preclusive effect to legal rulings made or sustained in prior appeals in the same litigation:

> " 'It is a general principle of law and one well recognized in this state that when a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review.' "

*State v. Pratt*, 316 Or 561, 569, 853 P2d 827, *cert den*, 510 US 969 (1993) (quoting *Simmons v. Wash. F.N. Ins. Co.*, 140 Or 164, 166, 13 P2d 366 (1932)); *see Hayes Oyster Co. v. Dulcich*, 199 Or App 43, 53, 110 P3d 615, *rev den*, 339 Or 544 (2005) (generally describing application of the doctrine). *See generally Black's Law Dictionary* 903 (8th ed 2004) (defining "law of the case" as "[t]he doctrine holding that a decision rendered in a former appeal of a case is binding in a later appeal").

■ However, the doctrine can also apply to prior trial court rulings within the same case:

> " 'A trial court may rule on a matter and then the same legal question may be raised a second time in the same trial court. This may be before the same judge or before a different judge.' "

*Morley v. Morley*, 24 Or App 777, 781, 547 P2d 636 (1976) (quoting Allen D. Vestal, *Law of the Case: Single-Suit Preclusion*, 1967 Utah L Rev 1, 4 (1976)). Whatever the context, as the court explained in *Koch v. So. Pac. Transp. Co.*, 274 Or 499, 511-12, 547 P2d 589 (1976), the application of the doctrine is, ultimately, prudential:

> "The policies underlying the doctrine of the 'law of the case' essentially parallel those served by the doctrines of *stare decisis* and res judicata/preclusion, i.e., consistency of

judicial decision, putting an end to litigation of matters once determined, and preserving the court's prestige. [Vestal, 1967 Utah L Rev 1]. Briefly stated, the doctrine of the law of the case precludes relitigation or reconsideration of a point of *law* decided at an earlier stage of the *same* case. The rationale is that a court should adhere to a previous ruling on an identical matter, whether rightly or wrongly decided, in order to advance the policies enumerated above."

(Emphasis in original.)

In this case, the trial court's invocation of "law of the case" did not comport with the prudential considerations underlying that doctrine, which "essentially parallel those served by the doctrines of [claim preclusion and issue preclusion]." *Id.* As a practical matter in the circumstances presented here, petitioner, the "precluded" party, did not have a "full and fair opportunity to be heard" on the existence of a child-parent relationship. *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (listing elements of issue preclusion). That is so because of the limited nature of a temporary visitation hearing. At the outset of the hearing here, the judge who presided explicitly acknowledged that the hearing did not pertain to entitlement to relief under the petition but was, instead, limited to the question of temporary visitation. *See* 208 Or App at 445. Further, at the conclusion of the hearing, that judge expressed her understanding that her findings were not intended to be preclusive and that all matters were subject to relitigation at the time of trial on the petition. *See* 208 Or App at 445-46 (quoting judge's reference to "when this case comes up for trial on the underlying petition, which is like we have to have two trials on this issue"). Thus, at the time of the temporary visitation hearing, the court and the parties understood that that hearing was not the parties' exclusive opportunity to litigate the existence of a "child-parent relationship"—or to be forever precluded by the result.

Conversely, if sustained, the trial court's application of "law of the case" would dramatically, indeed radically, transform the nature of such preliminary proceedings under ORS 109.119. Parties, faced with potential preclusion, would be compelled to present all of their evidence—their entire

case with respect to the nature of the relationship and rebuttal of the statutory "best interest" presumption—in the context of the temporary visitation hearing. Such a result would frustrate, not promote, the prudential principles of "judicial economy and judicial discretion"[4] that underlie "law of the case" and other preclusion doctrines.

We thus conclude that the trial court erred in precluding petitioner from presenting evidence pertaining to the possible existence of a "child-parent relationship" within six months of the filing of the petition. Given the totality of the record and the content, albeit imprecise, of petitioner's offer of proof, we cannot say that error was harmless.

Reversed and remanded.

---

[4] *State v. Metz*, 162 Or App 448, 454, 986 P2d 714 (1999), *rev den*, 330 Or 331 (2000).