Argued and submitted October 4, 2019, reversed and remanded
February 18, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LATRELL EARVIN POSTON,
*Defendant-Appellant.*

Multnomah County Circuit Court
120431530; A167302

482 P3d 778

Defendant appeals from a judgment entered by the trial court after it resentenced him on six counts of promoting prostitution following a remand from a previous appeal. Among other contentions, defendant argues that the court plainly erred in accepting nonunanimous jury verdicts in light of *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). The state agrees that a *Ramos*-based challenge ordinarily would be reviewable on direct appeal, but it argues that the Court of Appeals rejected the same unanimity argument in the earlier appeal (albeit before *Ramos* was decided) and limited the remand to sentencing issues. For that reason, the state argues, the law of the case doctrine and the scope of the remand preclude reversal based on the court's acceptance of nonunanimous jury verdicts. *Held*: The prudential doctrine of law of the case must give way to the intervening, inconsistent, controlling decision by the United States Supreme Court, and, in light of that intervening change in the law, defendant's challenge was not barred by the scope of the remand.

Reversed and remanded.

Eric L. Dahlin, Judge.

Ingrid A. MacFarlane, Deputy Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Latrell Poston filed the supplemental brief *pro se*.

Before Lagesen, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.*

_____

* Egan, C.J., *vice* Schuman, S.J.

POWERS, J.

Reversed and remanded.

**POWERS, J.**

In this case, we must chart the outer limits of the "law of the case" doctrine and address whether that doctrine or the scope of our prior remand prevents defendant from challenging the validity of his convictions. We conclude that the prudential doctrine of law of the case must give way in this instance to an intervening, inconsistent, controlling decision by a higher court. We further conclude that consideration of defendant's challenge is not barred by the scope of our remand, reach the merits of defendant's challenge, and reverse and remand.

Defendant appeals from a judgment entered by the trial court after it resentenced him on six counts of promoting prostitution following our decision in an earlier appeal, *State v. Poston*, 277 Or App 137, 370 P3d 904 (2016) (*Poston I*), *adh'd to on recons*, 285 Or App 750, 399 P3d 488 (*Poston II*), *rev den*, 361 Or 886 (2017). In that earlier appeal, defendant challenged convictions on the six counts of promoting prostitution as well as counts of identity theft. He argued that the court erred in accepting nonunanimous jury verdicts, and we rejected that argument without discussion, as we routinely did at that time based on controlling precedent. *Poston I*, 277 Or App at 138. However, defendant also argued that the indictment was defective in joining all of the counts, and we agreed with him on that point. We reversed the convictions for identity theft but ultimately concluded that the error was harmless with regard to the six counts of promoting prostitution. We therefore affirmed the convictions on those six counts and remanded for resentencing. *Poston I*, 277 Or App at 146 (remanding for resentencing on those counts); *Poston II*, 285 Or App at 751 (adhering to that disposition).

In 2018, following our directive, the trial court resentenced defendant on the six counts of promoting prostitution. Defendant then appealed the resulting judgment, assigning error to the trial court's calculation of his criminal history, its imposition of an aggregate sentence purportedly violating the "200 percent rule," its failure to merge the guilty verdicts, and its failure to consider defendant's post-sentencing conduct; defendant also filed a *pro se*

assignment of error directed at the prejudice analysis in *Poston I*. The state filed an answering brief, arguing that none of the arguments was well taken.

Then the sea changed. While his appeal was pending, the Supreme Court of the United States issued its decision in *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), which "upended 48 years of precedent holding that the unanimity requirement of the jury trial provision of the Sixth Amendment was not incorporated against the states." *State v. Herfurth*, 307 Or App 534, 536, 478 P3d 601 (2020). Under *Ramos*, a trial court's entry of judgments of conviction based on nonunanimous verdicts violates a defendant's right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution. 590 US at ___, 140 S Ct at 1397.

Defendant asked to file a supplemental brief based on *Ramos*, and we allowed that request. He then added a supplemental assignment of error that essentially raised the same argument that we rejected in his earlier appeal, *viz.*, that the verdict on each of the counts of promoting prostitution was nonunanimous and therefore violated his Sixth Amendment rights. The state does not dispute the substance of defendant's argument; in fact, it concedes that "[d]efendant is correct that the jury's guilty verdicts on those counts were not unanimous" and that "to be sure, it is now established that an unpreserved *Ramos*-based challenge to a nonunanimous verdict is reviewable as plain error on direct appeal and may thereby provide a basis for an appellate court to reverse and remand for a new trial." The state's only argument is this: too late.

According to the state, this court's earlier decisions "finally *affirmed* his convictions" and "[c]onsequently, well-established principles of 'law of the case' and 'limited scope of remand' preclude defendant, in this appeal, following a resentencing-only remand, from now challenging the validity of his convictions on a ground that he asserted but this court rejected in his previous appeal." (Emphasis in original.)

We generally agree with the state's argument that, as "'a general principle of law and one well recognized in

this state,'" a decision by an appellate court, although it may be overruled in other cases, "'is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review.'" *State v. Pratt*, 316 Or 561, 569, 853 P2d 827 (1993) (quoting *Simmons v. Wash. F. N. Ins. Co.*, 140 Or 164, 166, 13 P3d 366 (1932)). That principle, however, is not absolute. As the Supreme Court has explained, the policies underlying the general rule are prudential:

> "The policies underlying the doctrine of the 'law of the case' essentially parallel those served by the doctrines of *stare decisis* and *res judicata*/preclusion, *i.e.*, consistency of judicial decision, putting an end to litigation of matters once determined, and preserving the court's prestige. [Allan D.] Vestal, *Law of the Case: Single-Suit Preclusion*, 1967 Utah L Rev 1 (1967). Briefly stated, the doctrine of the law of the case precludes relitigation or reconsideration of a point of law decided at an earlier stage of the same case. The rationale is that a court should adhere to a previous ruling on an identical matter, whether rightly or wrongly decided, in order to advance the policies enumerated above."

*Koch v. So. Pac. Transp. Co.*, 274 Or 499, 511-12, 547 P2d 589 (1976) (emphasis omitted); *see also Poet v. Thompson*, 208 Or App 442, 450, 144 P3d 1067 (2006) ("Whatever the context, as the court explained in [*Koch*], the application of the doctrine is, ultimately, prudential[.]").

In *Koch*, the Supreme Court, citing Professor Vestal's article, observed that "[t]here is no uniformity among the jurisdictions either in the stages at which the doctrine is given effect or in the rigidity with which it is applied," 274 Or at 512. Importantly, however, Vestal proceeded to identify one area where there was little room for disagreement: the well-established exception in the case of "intervening, inconsistent, controlling authority." 1967 Utah L Rev at 6. As Vestal explains:

> "One of the recurring problems is that which arises when a determination has been made by a court and this is followed by an apparently contrary determination by a higher, controlling court, which does not actually overrule the first decision because it involves different persons.

> When the first suit continues, does the earlier—now seemingly incorrect—determination control? An example of this might be a case in which a question has been determined by a state supreme court and remanded to the trial court for further proceedings. If the United States Supreme Court considers this question in other litigation and holds contrary to the state supreme court, should the trial court proceed to try the matter under the mandate which now seems to be incorrect? The waste of judicial manpower is obvious."

*Id.* He then proceeded to discuss federal and state cases that "accepted this exception to 'law of the case.'" *Id.* at 8 (explaining that "controlling authority" is a higher court directly in line in the hierarchy of judicial power—in "the case of a state trial court applying the 'law of the case' established by an intermediate appellate court, the higher controlling authority would be the state supreme court or the Supreme Court of the United States").[1]

Oregon is among the states that have recognized the well-established exception for an intervening, inconsistent, controlling change in law. In *Morley v. Morley*, 24 Or App 777, 781, 547 P2d 636 (1976), we explained that "[a] change of law or change of facts since the prior adjudication does not negate the applicability of res judicata; but such a change can be a compelling basis to negate the applicability of law of the case." And in *State v. Metz*, 162 Or App 448, 454, 986 P2d 714 (1999), *rev den*, 330 Or 331 (2000), we held that

---

[1] Courts have continued to recognize this common-sense exception in the years following Vestal's article, explaining that it presents the most straight-forward and obvious case for disregarding an earlier decision. *See, e.g.*, *Roberson v. Perez*, 156 Wash 2d 33, 43, 123 P3d 844, 849 (2005) (explaining that "[a]n appellate court's discretion to disregard the law of the case doctrine is at its apex when there has been a subsequent change in controlling precedent on appeal"); *People v. Stanley*, 10 Cal 4th 764, 787, 897 P2d 481, 492-93 (1995), *cert den*, 517 US 1208 (1996) ("[T]he doctrine will not be adhered to where *** the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations."); *see also Ellis v. United States*, 313 F3d 636, 648 (1st Cir 2002) (recognizing the established exception to "law of the case" where intervening controlling authority makes reconsideration appropriate); *Hegler v. Borg*, 50 F3d 1472, 1475 (9th Cir 1995) (same); 18 B *Wright and Miller's Federal Practice and Procedure* § 4478 (2d ed Oct 2020 Update) ("Perhaps the most obvious justifications for departing from the law of the case arise when there has been an intervening change of law outside the confines of the particular case. The easiest cases occur when the law has been changed by a body with greater authority on the issue ***.").

"[t]he law of the case doctrine is essentially one of judicial economy and judicial discretion," and that "[d]efendant offers no cogent reason why this doctrine should be extended to preclude courts from recognizing and applying newly enacted laws, and we are aware of none." In so holding, we cited cases from other jurisdictions to the effect that "there is an exception to the law of the case doctrine if there has been a change in the controlling law between the first and second appeal." *Id.* at 718; *see also State v. Osborne*, 82 Or App 229, 236, 728 P2d 551 (1986) (observing that "changes in the law or in the facts since the prior ruling can negate" application of law of the case).

Those precedents fit within the broader tapestry of Oregon's approach to the doctrine of law of the case, which is prudential in nature rather than blind to justice. In *Marr et al v. Putnam et al*, 213 Or 17, 23, 321 P2d 1061 (1958), the Supreme Court opined that "a court should not blindly adhere to a former decision that is manifestly erroneous," but that "stability of the law requires that there be very cogent reasons for abandoning a former decision, particularly when it was between the same parties and on the same pleadings." An intervening, inconsistent, controlling decision by a higher court is unquestionably a cogent reason to depart from an earlier decision in the same case, if not an obligatory one under certain circumstances.[2]

*Ramos* qualifies as that type of intervening and controlling decision, as we recently discussed in *Herfurth*. In *Herfurth*, the defendant raised jury unanimity arguments that could have been raised in an earlier appeal but were not. The state argued, as it does in this appeal, that, notwithstanding the court's intervening decision in *Ramos*, we

---

[2] Because of the timing of the *Ramos* decision, this issue was not raised in the trial court and is now presented as a claim of plain error—one that we have discretion to entertain under our rules of appellate procedure. Under different circumstances—for instance, if we had rejected a claim of error based on a jury unanimity instruction but remanded for a retrial, a trial court and this court could not continue to rely, post-*Ramos*, on previous decisions of this court to approve a less than unanimous verdict on retrial. The rule announced in *Ramos* applies to all cases now on appeal—regardless of whether the trial occurred before or after *Ramos*. *See State v. Flores Ramos*, 367 Or 292, 294-95, 478 P3d 515 (2020) (holding that *Ramos* applies to all cases still on direct appeal (citing *Griffith v. Kentucky*, 479 US 314, 107 S Ct 708, 93 L Ed 2d 649 (1987))).

should reject the defendant's arguments based on law of the case; alternatively, it argued that we should reject the argument based on waiver principles. We disagreed, explaining that the law of the case doctrine bars consideration of an issue only when an appellate court has previously made a binding ruling or decision on the same issue, which had not happened in that case. But then, addressing the argument that the defendant had waived the issue by not raising it earlier, we discussed some of the same prudential concerns that underlie the law of the case doctrine:

> "Given the significant change in law effected by *Ramos*, we do not perceive defendant's present challenge to the verdicts as encouraging piecemeal litigation or undercutting finality or judicial efficiency, and the state has not explained how that might be the case—let alone how those considerations would outweigh remedying Oregon's violation of defendant's federal constitutional right to have the jury reach unanimous agreement on his guilt."

*Herfurth*, 307 Or App at 538.

Although this case presents a slightly different procedural wrinkle—the issue was presented and decided in an earlier appeal—our observations in *Herfurth* about prudential considerations are equally apt, if not more so. Defendant has not taken a piecemeal approach; he raised this challenge in his first appeal but, because of controlling United States Supreme Court authority, we rejected it. Here, as in *Herfurth*, we do not perceive how consideration of defendant's argument at this stage of his direct appeal undercuts the prudential considerations underlying the doctrine of law of the case. As Judge Learned Hand explained, the law of the case doctrine "does not rigidly bind a court to its former decisions, but is only addressed to its good sense. There can surely be no greater reason for changing our views than because the Supreme Court has directly ruled upon the precise point in the interim." *Higgins v. California Prune & Apricot Grower, Inc.*, 3 F2d 896, 898 (2d Cir 1924) (citations omitted). We therefore reject the state's contention that "law of the case" precludes our consideration of defendant's supplemental assignment of error based on the significant change in the law that resulted from *Ramos*.

We likewise reject the state's argument that our review is precluded by the "scope of the remand." That argument is predicated on the Supreme Court's analysis in *State v. Bowen*, 355 Or 469, 473-74, 326 P3d 1162 (2014). In *Bowen*, the defendant argued that the Supreme Court's disposition in an earlier appeal had violated a statute that was in effect at the time, such that "the trial court erred by following the terms of [the] court's remand, rather than resentencing defendant as [the] court should have ordered." 355 Or at 473. In rejecting that argument, the Supreme Court stated:

> "We agree with the state that defendant may not now take issue with our disposition in [the previous appeal] by predicating his claim of error on the trial court's adherence to the terms of our limited remand. As the state accurately points out, defendant assigns error to the trial court's failure to resentence him, but the argument that defendant makes in support of that claim is not that the trial court erred. Rather, defendant's argument is that this court erred when it failed to order resentencing on remand in [the previous appeal] and ordered, instead, that the trial court correct the judgment in a specified way. Defendant does not dispute that the trial court did exactly as our opinion—and later, our corresponding appellate judgment—directed the trial court to do. A claim of trial court error simply cannot be predicated on the trial court having done what this court ordered it to do."

*Id.* at 474 (emphasis omitted). According to the state, the same can be said here: Error cannot be predicated on the trial court resentencing defendant after this court remanded for that limited purpose only.

*Bowen* is readily distinguishable. It did not involve an intervening change in the law but rather a party's failure to raise a claim under existing law "in a timely and procedurally proper way." *Id.* at 474. Here, by contrast, defendant raised a jury unanimity argument in an earlier appeal and again at the first available opportunity after *Ramos* was decided. In this context—a timely and procedurally proper argument that the trial court plainly erred based on an intervening change in law—the claim of error can be predicated on the trial court doing exactly what it was directed to do on remand. As the Supreme Court has explained, and as

we observed in *Herfurth*, the term "plain error" is something of a misnomer where there has been an intervening change in the law. 307 Or App at 538-39 (citing *State v. Zavala*, 361 Or 377, 380 n 1, 393 P3d 230 (2017)). Where there has been an intervening change in the law, the use of the term "plain error" is not to imply that the trial court made a mistake; rather, "it is a label that an appellate court uses when it decides that a party is entitled to a benefit of a change in the law." *Zavala*, 361 Or at 380 n 1. Therefore, the question before us is not, as the state's argument frames it, whether the trial court erred in following our remand. The question is whether the court, by entering judgment on nonunanimous verdicts, violated defendant's Sixth Amendment rights as recognized in *Ramos*. Thus, we reject the state's argument that our consideration of defendant's supplemental assignment of error is barred by the "scope of the remand." *Accord State v. Horner*, 309 Or App 136, 481 P3d 442 (2021) (reversing convictions based on nonunanimous jury verdicts in subsequent appeal after remand for resentencing).

Turning to the merits of that supplemental assignment of error, we agree with defendant that the court's entry of judgment based on nonunanimous jury verdicts on six counts of promoting prostitution was plainly erroneous and requires reversal. The verdict on one of the counts was 11-1, and the verdicts on the rest were 10-2. In light of *Ramos*, it is "clear that all convictions for serious offenses that were based on nonunanimous verdicts involved constitutional error—a violation of the defendant's Sixth Amendment right to jury unanimity." *State v. Flores Ramos*, 367 Or 292, 295, 478 P3d 515 (2020). And, furthermore, the Supreme Court has concluded that "the nature of the error in this case is such that an appellate court ordinarily should review it." *State v. Ulery*, 366 Or 500, 504, 464 P3d 1123 (2020). For the reasons expressed in *Ulery*, we exercise our discretion to reverse and remand defendant's convictions for promoting prostitution. That disposition obviates the need to address defendant's remaining assignments of error.

Reversed and remanded.