No. 182 March 5, 2025 419

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVEN CLYDE DEARMITT,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1401357; A180226

Susie L. Norby, Judge.

Argued and submitted April 24, 2024.

Brett J. Allin, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Walters, Senior Judge.*

WALTERS, S. J.

Remanded for resentencing; otherwise affirmed.

_____
    * Walters, S. J., *vice* Jacquot, J.

## WALTERS, S. J.

Defendant appeals, for the third time, challenging the sentence that he received after he entered a guilty plea on four counts of second-degree sexual abuse.[1] In two previous appeals—*State v. Dearmitt*, 299 Or App 22, 448 P3d 1163 (2019) (*Dearmitt I*), and *State v. Dearmitt*, 321 Or App 628, 517 P3d 368 (2022) (*Dearmitt II*)—we remanded for resentencing. In this appeal, we again remand for resentencing, concluding that the sentencing court erred in considering defendant's prior convictions for failure to register as a sex offender and in using facts not alleged by the state to justify the departure sentence that it imposed.

## I.  BACKGROUND

The following provides a general overview of the undisputed background facts and the procedural posture of this case. We discuss additional, specific facts as relevant to particular arguments.

In 2014, the Oregon State Police received letters that defendant had written to a fellow inmate while incarcerated in prison. The letters, the contents of which we detail later, describe sexual acts between defendant and two children. Detective Marquez interviewed defendant about the letters, and he claimed that he had made up the described events; that they were not true. On the day of the interview, defendant submitted to and failed a polygraph asking about the contents of the letters. Marquez again interviewed defendant, and, at that time, he disclosed that he had abused the minor victim in this case, C. Based on that disclosure, the state charged defendant with five counts of second-degree sexual abuse and one count of third-degree rape. The state also alleged, as an enhancement fact, defendant's "persistent involvement in similar offenses." *See* OAR 213-008-0002(1)(b)(D) (identifying, as part of a nonexclusive list of

---

[1] The court entered three judgments—one in November 2022, an amended judgment in December 2022, and a second amended judgment in February 2023. The amended judgment entered in December 2022 imposed terms of post-prison supervision that the court had omitted from the November 2022 judgment. Those terms are not at issue here. For ease of reference, we therefore refer to the February 2023 judgment as the "amended judgment" rather than as the "second amended judgment."

aggravating factors for a sentence departure, "[p]ersistent involvement in similar offenses").

In 2015, defendant pleaded guilty to four counts of second-degree sexual abuse.[2] Defendant admitted to unlawfully subjecting C to sexual contact without her consent by penetrating her vagina with his finger and by sexual intercourse and anal penetration. He admitted doing so between 2003 and 2005, when defendant was 21 to 23 years old, and C was 13 to 15 years old. With regard to the appropriate sentence, the parties informed the court that defendant's presumptive prison sentence under the felony sentencing guidelines was based on a grid block that classified each offense as a "7." However, because the state had alleged an enhancement fact—persistent involvement—further fact-finding was necessary. Defendant stipulated to admission of the state's evidence of that fact and waived his right to have a jury decide it. Sentencing was set over to a later date.

The original sentencing occurred in 2016. On three of the four counts of second-degree sexual abuse, the court imposed the maximum departure sentence of 60 months in prison, and on the fourth, it imposed 18 months in prison and 60 months of post-prison supervision, to be served consecutively. Defendant appealed, assigning error to, among other things, the court's failure to merge the guilty verdicts on two of the counts into a single conviction. Agreeing, we reversed and remanded for merger and resentencing. *Dearmitt I*, 299 Or App at 23.

The second sentencing occurred in 2020. A different judge merged the guilty verdicts on the two counts as ordered and, for each of the remaining convictions, imposed the same maximum durational departure sentences.

Defendant again appealed. He contended, among other things, that, although the state had pleaded only one enhancement fact (persistent involvement in similar offenses), the resentencing court had imposed its departure sentence based, not only on that fact, but also on a number of other unpleaded enhancement facts (untreated substance

---

[2] At sentencing, the rape count and remaining count of sexual abuse were dismissed.

abuse, defendant not being amenable to treatment, that a lesser sentence would not deter defendant, and that defendant presented a danger to the community). *Dearmitt II*, 321 Or App at 629-30. The state agreed that the only enhancement fact that it had alleged was persistent involvement. *Id.* at 630. However, the state argued, the court's imposition of the departure sentence should be affirmed for either of two alternative reasons: (1) the resentencing court had considered the unpleaded facts solely to support its finding of persistent involvement; and (2) once a court finds a pleaded enhancement fact, it is free to rely on additional, unpleaded facts in deciding whether and how much to depart. *Id.* at 631.

We were unable to resolve the parties' dispute because of ambiguities in the trial court record. We recognized that the resentencing court had made a finding of persistent involvement, but we could not tell whether that finding was the sole reason for the court's decision to impose its sentence. *Id.* Accordingly, we again remanded for resentencing. *Id.* at 632. In doing so, we noted that the "ambiguity regarding the basis for the departure sentence is compounded by the fact that the record is unclear whether the sentencing court found that a single prior adjudication for a similar sexual offense would satisfy that enhancement factor, which would be contrary to our case law." *Id.* at 631 n 3 (citing authority for the proposition that one prior conviction or criminal episode did not establish persistent involvement).

Defendant's third sentencing hearing took place in 2022 before the same judge who had resentenced him in 2020. The state filed a sentencing memorandum, in which it incorporated by reference all of its prior sentencing memoranda, evidence, and arguments. The evidence on which the state relied included defendant's juvenile adjudication for conduct that would constitute first-degree sexual abuse, two prior convictions for failure to register as a sex offender, and the letters that he wrote while in prison. The state argued that "[a]ll that is necessary as a legal basis for a court to have authority to impose an upward departure is a single finding of an aggravating factor that was properly alleged and proved" and that "[o]nce such a finding is made, a sentencing court then properly may consider a myriad of

other factors in deciding whether and the extent to which it should depart."

At the 2022 sentencing hearing, the state reiterated its written arguments, and defendant contended that the evidence that the state had proffered was insufficient to support a persistent involvement finding. Defendant argued that the state's only proffered evidence of a "similar offense" was one juvenile adjudication of conduct that would constitute sex abuse and that that adjudication was neither an "offense" nor sufficiently "similar" to adult conduct to permit it to be used to support a finding of persistent involvement. The court and defendant then discussed the state's reliance on the letters that defendant had written while in prison and the events described in those letters. In the course of that discussion, the court stated that it believed that the conduct described in the letters had occurred. The court then went on to clarify that its 2020 departure sentence had been based only on its finding of persistent involvement in similar offenses and said that its intent in considering other factors was to do so in "determining the precise degree of the upward departure." In November 2022, the court entered a judgment affirming its earlier persistent involvement finding and reimposing the same sentence that it had imposed in 2020—a maximum departure sentence of 60 months in prison on each of three convictions for second-degree sexual abuse to be served consecutively.[3]

---

[3] Approximately three months later, defendant filed a *pro se* motion to correct the judgment for reasons not relevant to this appeal, which the sentencing court denied by order. In the same order, however, the court also reincorporated its 2020 departure findings. The court had not included those findings in its earlier judgment and explained that its failure to do so had been a clerical error:

"In November 2022, I ruled that the exact same findings, conclusions and sentences previously issued [in 2020] would be re-imposed. However, the 2022 General Judgment only listed one of the six findings made on the record in 2020 for the departure sentences, *i.e.*, Persistent involvement. The other five findings were omitted from the 2022 General Judgment.

"NOW, THEREFORE, the Court orders that the 2022 General Judgement be corrected to incorporate all of the findings that were made on the record in 2020, as listed above. Their omission in 2022 was a clerical error that must be corrected."

Accordingly, the court issued an amended judgment in February 2023 that included the same six enhancement facts as had been included in the 2020 judgment. Here, defendant appeals both judgments. Our decision in this case is not affected by the findings that the court described as a clerical error, and we do not separately address the amended judgment.

## II. ANALYSIS

On appeal, defendant contends that the sentencing court erred in imposing its departure sentences. He contends that the evidence was insufficient to support a finding of persistent involvement, or, alternatively, that, even if the evidence was sufficient the sentencing court erred because it did not impose its sentence based solely on that fact. Instead, defendant contends, the sentencing court used unpleaded facts to determine and justify its departure sentence in violation of ORS 136.765 and the Sixth Amendment to the United States Constitution. Finally, defendant argues that the sentencing court erred in considering defendant's offenses to be level "7" offenses on the crime seriousness scale in violation of *State v. Simonson*, 243 Or App 535, 259 P3d 962 (2011), *rev den*, 353 Or 788 (2013).

### A. *Imposition of Sentence Based on "Persistent Involvement" Factual Finding*

We begin our analysis with defendant's contentions that the sentencing court erred in imposing a departure sentence because the evidence proffered by the state was insufficient to support a finding of persistent involvement and that, even if the letters were legally sufficient, we must remand for the court to decide whether the letters, alone, showed persistent involvement. The state's first counterargument is that defendant's claim of error is barred by the "law of the case" doctrine. That doctrine bars consideration of an issue when an appellate court previously "has made a binding 'ruling or decision'" on the issue. *Rains v. Stayton Builders Mart, Inc.*, 289 Or App 672, 680, 410 P3d 336 (2018) (quoting *Kennedy v. Wheeler*, 356 Or 518, 524, 341 P3d 728 (2014)).

As the state appears to recognize, that doctrine is not directly applicable here: This court did not make a decision in *Dearmitt I* or *Dearmitt II* on the issue of whether the state's evidence was sufficient to support a persistent involvement finding. The state's argument is more correctly understood as an argument from principles that underlie the law of the case doctrine—principles of waiver. The state seems to argue that, because defendant reasonably could

have raised a sufficiency of the evidence challenge in his first appeal, but failed to do so, he effectively waived that argument and cannot assert it here.[4] *See, e.g.*, *State v. Herfurth*, 307 Or App 534, 538, 478 P3d 601 (2020) (concluding that the defendant did not, as the state argued, waive his right to challenge the issue in his third appeal even though he had not raised it in an earlier appeal, applying the "considerations that come into play in evaluating whether to consider an issue that was not raised at the first available opportunity"); *State v. Poston*, 309 Or App 377, 383-84, 482 P3d 778 (2021) (our conclusion in *Herfurth* that the defendant did not waive the issue that he challenged in his third appeal by not raising it in an earlier appeal was based on "some of the same prudential concerns that underlie the law of the case doctrine").

      The state is correct that defendant did not argue in his first appeal that the sentencing court's imposition of a departure sentence was erroneous because the evidence was insufficient to support a finding of persistent involvement. However, after defendant's first appeal and the remand we ordered in *Dearmitt I*, the sentencing court conducted a second sentencing hearing and again found persistent involvement, and defendant brought a second appeal. In that second appeal, defendant changed course and argued that the court's imposition of a departure sentence was erroneous because the evidence on which the court relied at the second sentencing hearing was insufficient to support the court's persistent involvement finding; in response, though, the state did not contend that defendant had waived his right to raise that challenge. And, in our opinion in *Dearmitt II*, we treated the sufficiency of the evidence as a pending issue, noting, as indicated, that the "ambiguity regarding the basis for the departure sentence is compounded by the fact that the record is unclear whether the sentencing court found that a single prior adjudication for a similar sexual

---

[4] At times the state refers to defendant's failure to raise the challenge as a lack of "preservation." As the state conceded at oral argument, however, defendant raised the issue of the sufficiency of the evidence in the trial court. The record demonstrates that, at each of his sentencing hearings, defendant challenged the sufficiency of the evidence to support a persistent involvement finding. The issue before this court is not one of "preservation of error" in the trial court, but, instead, an issue of waiver of a preserved challenge on appeal.

offense would satisfy that enhancement factor, which would be contrary to our case law." 321 Or App at 631 n 3.

In this third appeal, defendant raises the same legal issue that he raised in his second appeal. Given the state's failure to argue that defendant had waived the issue of the sufficiency of the evidence and the fact that we, ourselves, flagged that issue for consideration on remand, we cannot conclude that it would offend principles of fairness to permit defendant to raise that issue here. In addition, we note that, in this third appeal, the state responds to defendant's argument that the evidence is insufficient to support a finding of persistent involvement by pointing to an express factual finding that the sentencing court made in the third sentencing hearing that had not been made in either of the two prior sentencing hearings. Given that new finding, the argument before us now is not the same argument that we could have considered in *Dearmitt I*, and we do not see a prudential reason to refrain from considering it here.

Proceeding, then, to the merits of defendant's argument that the state did not present evidence sufficient to support the sentencing court's finding of persistent involvement, we note that a finding of persistent involvement requires two or more instances of conduct. *State v. Rodriguez*, 113 Or App 696, 699 n 2, 833 P2d 1343 (1992) (concluding "that one prior criminal episode will not support a finding of 'persistent involvement in similar offenses'"). The conduct must constitute "offenses" and must be "similar" to the conduct for which the defendant is being sentenced. OAR 213-008-0002(1)(b)(D).

Before this court, the state contends that it proved two or more similar offenses by proffering evidence that defendant engaged in the criminal acts that he described in the letters that he wrote in prison. The state does not argue, as it did in the trial court, that additional evidence that it proffered there—defendant's juvenile adjudication for conduct that would constitute first-degree sexual abuse, and his two prior convictions for failure to register as a sex offender—meets that standard. Consequently, we focus on the letters that defendant wrote and defendant's contention that the expressions in the letters do not constitute "offenses"

because the record does not support a nonspeculative infer-
ence that the conduct described in the letters actually
occurred. The "record" to which defendant refers includes
the letters themselves; Marquez's report after talking with
defendant about the letters; interviews with defendant; an
interview with S, one of the children discussed in the let-
ters; and portions of the transcript of a polygraph examina-
tion of defendant. Defendant did not stipulate to the truth
of that evidence, but he stipulated to its admission. With
regard to the sufficiency of that evidence, defendant argues
that the record "contains no evidence that any of the 'acts'
described in the letters were based on real events," and that,
prior to 2022, the prosecutor and court both acknowledged
not knowing whether anything described in the letters had
occurred.

    Defendant is correct that, at different points, the
prosecutor and court acknowledged that some of the con-
duct described in the letters could be fictional, as defendant
asserted. However, the sentencing court ultimately stated
that it believed that the conduct occurred. Consequently, the
question before us is whether a reasonable factfinder could
make that finding and all inferences necessary to that find-
ing. *See State v. Davilla*, 280 Or App 43, 59, 380 P3d 1003
(2016) (explaining that the appellate court reviews a trial
court's factual findings justifying a sentencing departure
for whether they are "supported by evidence in the record").
As in the context of a finding of guilt, the requirement that a
factfinder be convinced beyond a reasonable doubt does not
mean that the state must show that the inference it seeks
inevitably follows from the established facts. *State v. Beason*,
170 Or App 414, 423-24, 12 P3d 560 (2000), *rev den*, 331 Or
692 (2001). "Rather, the established facts may support mul-
tiple reasonable inferences and, if they do, which inference
to draw is for the [factfinder] to decide." *State v. Bivins*, 191
Or App 460, 467, 83 P3d 379 (2004) (citing *State v. Hall*, 327
Or 568, 574, 966 P2d 208 (1998), and *Beason*, 170 Or App at
425).

    In the letters he wrote, defendant described in
graphic detail abuse that he said he had committed against
a four-year-old child, T, whom defendant said was the

daughter of his former girlfriend, K, and against K's young cousin, S. The additional evidence proffered by the state, including Marquez's report and interviews with defendant, indicates that K, T, and S all exist, and that T would have been four years old and S would have been about 10 years old during the time that defendant was in a relationship with K. The evidence also indicates that the event that defendant described in his letters as occurring while he was riding in the back of a car with K and T actually took place. In an interview, defendant admitted that, during that drive, he had been sexually aroused by T, although he denied assaulting her. Defendant also admitted that he had seen T running wet and naked in the house after a bath. Again, defendant denied touching T at that time. He did say, however, that he had touched T's butt at other times, but only in the context of picking her up.

Defendant also admitted to fantasizing about, and masturbating to thoughts of other children, including S. The police interviewed S, who said she was close to T and that T had told her that defendant "touched her and she, like she was embarrassed to say where." S said that defendant also had picked S up and slapped her butt; touching that she did not consider sexual. However, when asked about the descriptions defendant related in his letters, S confirmed that the places described in the letters existed and told the interviewer that, given the detail in the letters, "[i]f you guys believe he did it, he probably did it when I was, like, asleep or something, 'cause I'm a heavy sleeper"; later, she said that "I'm pretty sure he tried something when I was sleeping," again reiterating that she was a heavy sleeper. She also stated that "if he did something I probably blocked it out," and described defendant as taking opportunities to be near her. S also said that, on the way down to the garage to get camping equipment, defendant had touched her "front part," and told her not to tell anybody.

Here, the record before the sentencing court supported multiple reasonable inferences regarding the conduct described in the letters. The sentencing court could have found that defendant did not commit any of the described acts, but, viewing the evidence as a whole—the details in

the letters themselves and the corroboration of certain of those details—the court reasonably could have inferred that defendant had committed acts of sexual abuse on more than one occasion, as opposed to only fantasizing about that abuse.

Even assuming that defendant embellished some of the acts in the letters or that the letters include some fantasized abuse, the evidence before the sentencing court supports a nonspeculative inference that T and S actually existed, that defendant had opportunities to abuse them, and that he, in fact, committed multiple acts of child sexual abuse as opposed to merely fantasizing about touching them.

Given that available inference, we reject defendant's argument that the evidence was insufficient to demonstrate that the described child abuse actually occurred. We note that an "offense" can be based on conduct that did not result in a conviction. *See State v. Summerlyn*, 316 Or App 230, 233, 501 P3d 1076 (2021), *rev den*, 369 Or 505 (2022) ("[U]nadjudicated conduct may constitute one of the offenses necessary to establish persistent involvement."); *State v. Cam*, 255 Or App 1, 11, 296 P3d 578, *adh'd to as modified on recons*, 256 Or App 146, 300 P3d 208, *rev den*, 354 Or 148 (2013) ("In determining persistent involvement, a jury may consider a defendant's prior criminal conduct, even if that conduct did not result in a criminal conviction."). And we also note that defendant does not argue that, even if there was evidence from which the court could conclude that defendant engaged in multiple acts of child abuse, that evidence was not sufficient for the court to find that defendant's conduct of sexually assaulting young children was so continuous and recurring as to constitute persistent involvement. *See State v. Bray*, 342 Or 711, 724, 160 P3d 983 (2007) ("The trier of fact must infer from the number and frequency of those prior convictions whether the defendant's involvement in those offenses is 'persistent.'").

What defendant does argue, alternatively, is that a remand is nevertheless required. Defendant contends that, in reaching the factual conclusion that defendant's involvement in child sexual assault was "persistent," the court

incorrectly considered evidence in addition to the conduct described in the letters—two prior convictions for failure to register as a sex offender and one juvenile adjudication for conduct that would constitute first-degree sexual abuse. The state does not argue that the convictions for failure to register are "similar" to the convictions in this case, and we conclude that they are not. Whether prior offenses are "similar" "requires consideration of the nature of the offenses[.]" *State v. Cornelius*, 112 Or App 98, 100, 827 P2d 937, *rev den*, 314 Or 176 (1992). Here, sexual abuse is a "person crime," *State v. Kelly*, 263 Or App 361, 378, 328 P3d 757, *rev den*, 356 Or 575 (2014), and is statutorily defined as a "sex crime," ORS 163A.005(5)(d). Failure to register as a sex offender is not a "sex crime"; it is a "regulatory" crime. *State v. MacNab*, 334 Or 469, 482, 51 P3d 1249 (2002). Those offenses are not "similar."

As to the juvenile adjudication, the state takes the position that, due to the many instances of child abuse described in defendant's letter, the juvenile adjudication "does not matter." The state relies only on the acts of child abuse described in defendant's letters and does not respond to defendant's arguments that a juvenile adjudication does not constitute an "offense," is not "similar" to an adult conviction, and cannot be used for collateral purposes.

Given the state's position in this case and our conclusion that the sentencing court incorrectly considered defendant's convictions for failure to register as a sex offender, we agree with defendant that, under these particular circumstances we must remand for the sentencing court to reconsider its finding that defendant's involvement in child sexual assault was "persistent."

B.  *Imposition of Sentence Based on Other Aggravating Facts*

That conclusion does not end our inquiry, however. Even if the sentencing court adheres to its finding of "persistent involvement," we think it appropriate to take up defendant's second argument; that is, that the sentencing court erred because, in imposing its departure sentence, it used not only the pleaded enhancement fact—persistent

involvement—but also additional, unpleaded facts, in violation of statutory and constitutional law. As we explained in *Dearmitt II*, "once an aggravating factor is pleaded and proved, the trial court must then determine if that factor amounts to a substantial and compelling reason to depart." 321 Or App at 632 (citing *State v. Speedis*, 350 Or 424, 429, 256 P3d 1061 (2011) ("If the trier of fact finds beyond a reasonable doubt that an aggravating factor that the prosecutor has identified exists, then the trial court may enhance a defendant's sentence if it concludes that that aggravating factor provides a substantial and compelling reason for doing so.")).

In *Dearmitt II*, this court set out the principle that "[a] sentencing court may not rely on aggravating facts that were not included either in the indictment or in written notice to the defendant to support an upward departure." 321 Or App at 630 (citing ORS 136.765 and *Davilla*, 280 Or App at 62). In that earlier appeal, however, we could not determine whether the 2020 sentencing court had adhered to that principle. As described above, the state had presented and the court had considered unpleaded facts, including defendant's untreated substance abuse history, defendant's not being amenable to supervision or treatment for sex abuse or substance abuse, the fact that a lesser sentence would not deter defendant, and the fact that defendant presented a danger to the community. We could not tell if or how the sentencing court had used those facts, and we reversed and remanded for clarification and resentencing. On remand, the 2022 sentencing court again imposed a departure sentence and said that it was doing so based solely on its finding of persistent involvement. The court also said, however, that it had considered other, unpleaded facts, but only in "determining the precise degree of the upward departure."

Defendant now argues that that use of unpleaded facts violates Oregon statute and the Sixth Amendment.[5]

---

[5] Defendant notes that after issuing its original sentencing judgment, the sentencing court issued an amended judgment that reincorporated the unpleaded aggravation facts. *See* 338 Or App at 424 n 3. Defendant contends that the amended judgment establishes that the court's sentence was improperly based on those unpleaded aggravating facts. We do not address that argument because defendant's challenge to the court's original judgment is dispositive.

Specifically, defendant argues that ORS 136.765 "requires the state to plead enhancement facts in the charging instrument or give written notice of them within 60 days of arraignment '[i]n order to rely on an enhancement fact to increase the sentence that may be imposed in a criminal proceeding[.]'" Further, he argues that "the Sixth Amendment entitles a defendant to have a jury determine any aggravating factor that a court may then use to justify a sentence that exceeds the presumptive range." *State v. Upton*, 339 Or 673, 681, 125 P3d 713 (2005). Defendant contends that the sentencing court's use of unpleaded aggravating facts to justify the departure sentence that it imposed, including the length of that sentence, was legally impermissible.

The state disagrees. The state takes the position that as long as it alleges and proves a single sentence-enhancement fact that is legally sufficient to justify the sentence imposed, the sentencing court does not violate statutory or constitutional dictates by also considering other, additional facts in imposing that sentence. Those additional facts, the state contends, are not sentence-enhancement facts under ORS 136.765 or facts that are subject to the right-to-jury rule announced in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004). Thus framed, the issue is one of first impression. *See, e.g.*, *Davilla*, 280 Or App at 64 n 10 (explaining that we did not need to "decide in this case whether a sentencing court, having concluded that substantial and compelling reasons support an upward departure sentence, can consider factors other than an aggravating factor proved beyond a reasonable doubt to decide the length of any upward departure sentence").

And, thus framed, we agree with defendant. The state is correct that a finding of substantial and compelling reasons to depart from the presumed sentence can be based on a single enhancement fact. *Upton*, 339 Or at 687 ("A sentence that exceeds, or is below, a presumptive sentencing range may be based on a single factor, as long as the court concludes that the factor represents a substantial and compelling reason to impose a sentence that departs from

the presumption range."). But a sentencing court does not make an abstract decision to depart from a presumed sentence; rather, it makes a decision to impose a particular sentence—either the presumptive prison term or a departure sentence. And in Oregon, a departure sentence is not a sentence of a particular, prescribed length, although it is subject to a prescribed maximum length—no more than twice the prescribed sentence. OAR 213-008-0003(2) ("A durational departure from a presumptive prison term shall not total more than double the maximum duration of the presumptive prison term. In no case may the sentence exceed the statutory maximum indeterminate sentence described in ORS 161.605."). A departure sentence is the particular sentence selected by the sentencing court that exceeds the presumptive sentence but is no more than the maximum sentence. And it is that particular sentence, not the abstract decision to depart, that must be supported by facts that the state alleges and proves.

In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 US at 490. And in *Blakely*, the Court clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 US at 303 (emphasis omitted). Under *Blakely*, a defendant's right "to have the jury find the existence of 'any particular fact' that the law makes essential to his punishment" is "implicated whenever a judge seeks to impose a sentence that is not solely based on 'facts reflected in the jury verdict or admitted by the defendant.'" *United States v. Booker*, 543 US 220, 232, 125 S Ct 738, 160 L Ed 2d 621 (2005) (quoting *Blakey*, 542 US at 301-03). "Under *Blakely*, the Sixth Amendment entitles a defendant to have a jury determine any aggravating factor that a court may then use to justify a sentence that exceeds the presumptive range." *Upton*, 339 Or at 681.

Thus, in this case, the sentencing court could have based its decision to impose the selected sentence solely

on the single enhancement fact alleged by the state—persistent involvement. However, it did not do so. Rather, the sentencing court used and relied on additional, unpleaded facts to determine and justify the particular sentence that it imposed. Those facts were not reflected in the jury verdict or admitted by defendant, and the sentencing court erred in using them as it did. On remand, the court may not rely on any unpleaded facts to justify the sentence.

C. *Imposition of Sentence Based on Crimes Seriousness Score "7"*

Defendant asks that we address one final issue— whether the sentencing court erred in determining the presumptive sentence for the offenses for which defendant was convicted. To determine defendant's presumptive sentence, the original sentencing court applied a crime seriousness score of 7. On appeal, defendant argues that the court erred in doing so because, under the proportionality requirement of Article I, section 16, of the Oregon Constitution and *State v. Simonson*, 243 Or App 535, 259 P3d 962 (2011), *rev den*, 353 Or 788 (2013), a crime seriousness score of 6 must apply to his convictions.

The state contends that this assignment of error is not reviewable, citing ORS 138.105(9) for the proposition that that statute bars appellate review of "any part of a sentence resulting from a stipulated sentencing agreement between the state and the defendant." Defendant argues, as he did at trial, that he did not "stipulate" to sentencing under grid block 7; he only "acknowledged that the state would advocate for a score of 7, but he understood he would be going to an 'open' sentencing hearing." Defendant contends that the record does not support the sentencing court's determination that the parties "stipulated" to that score, and he cites portions of the transcript indicating that the state did not "rely" on the stated grid block in making the agreement reflected in the plea petition.

As noted, defendant filed a plea petition and entered a guilty plea on four counts of child sex abuse. In his plea petition, defendant identified the grid block—grid block 7—for each of the four offenses to which he pleaded guilty

and indicated that the state had agreed to dismiss the two remaining charges. Defendant did not agree to a specific sentence, and, in his plea petition, defendant stated that he knew that his sentence would be an "open sentence"—"up to the Court to decide."

In his sentencing memorandum and at sentencing, defendant argued that the proportionality requirement of Article I, section 16, and *Simonson*, 243 Or App 535, required that a crime seriousness score of 6 apply to his offenses. The state responded that defendant had stipulated to a crime seriousness score of 7. The sentencing court agreed with the state, noting that the parties' agreement, as it was presented to the court at the change-of-plea hearing, included an agreement that the convictions would be ranked in crime-seriousness category 7.

The parties treat the issue of whether the appropriate grid block was "part" of a "stipulated sentencing agreement" as a question of fact determined by the sentencing court, and we do not see the issue differently. Defendant pleaded guilty to four offenses and, in his plea petition, referenced an agreement with the state to dismiss the two remaining charges. Defendant informed the court that the offenses to which he had pleaded guilty were grid block 7 offenses, and he set out the consequent presumptive sentences for each. Defendant informed the court that he was aware that the maximum sentence that the court could impose was five years in prison on each charge, but that he was leaving the decision about what particular sentence to impose to the court.

Although defendant did not enter into an agreement to have the court impose a sentence of a specific length, the court found that he entered into a sentencing agreement that included an agreement as to the specific grid block classification. Under *State v. Rusen*, 369 Or 677, 695-96, 509 P3d 628 (2022), ORS 138.105(9) precludes review of a sentencing challenge not only when the parties agree to a specific sentence, but also when they agree to "a specific component that the court used to calculate the sentence—such as the grid block classification." Thus, based on the sentencing court's finding of fact, we conclude that defendant's claim of error is

not reviewable under ORS 138.105(9). *See Rusen*, 369 Or at 696 (explaining that the bar in ORS 138.105(9) applies "to preclude review only of the part of the sentence on which the parties agreed").

### III.   CONCLUSION

For the reasons given, we conclude that the sentencing court erred in considering defendant's prior convictions for failure to register as a sex offender and in using unpleaded enhancement facts to determine and justify the departure sentence that it imposed. We remand for the court to reconsider its finding that defendant's involvement in child sexual assault was "persistent" and for resentencing.

Remanded for resentencing; otherwise affirmed.